STEVEN I HOCHFELSEN, Bar No. 129491
DAVID W. KANI, Bar No. 243032
**HOCHFELSEN & KANI, LLP**
895 Dove St., Suite 300
Newport Beach, California 92660
Telephone: (714) 907-0697

Attorneys for Plaintiffs
*ZIP MEDICAL BILLING, LLC,*
*SIGNAL GENOMICS, LLC, &*
*SIGNAL DIAGNOSTICS, LLC*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ZIP MEDICAL BILLING, LLC, a Delaware Limited Liability Company; SIGNAL GENOMICS, LLC, a Delaware Limited Liability Company; SIGNAL DIAGNOSTICS, LLC, a Delaware Limited Liability Company;<br><br>Plaintiff,<br><br>vs.<br><br>ARK LABORATORY, LLC dba HELIX DIAGNOSTICS, a Michigan Limited Liability Company; JAMES GROSSI, an individual; NORMAN KIMINAIA, an individual; and DOES 1 through 100<br><br>Defendants. | Case No.: 2:20-cv-09049-FMO-JEM<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES**<br><br>1. **Breach of Contract**<br>2. **Intentional Misrepresentation**<br>3. **Negligent Misrepresentation**<br>4. **Breach of Contract**<br>5. **Intentional Misrepresentation**<br>6. **Negligent Misrepresentation**<br>7. **Breach of Contract**<br>8. **Fraudulent Inducement**<br>9. **Conspiracy to Defraud**<br>10. **Breach of Covenants of Good Faith and Fair**<br>11. **California Civil Code Section 1719(a)(1)** |

Plaintiffs ZIP MEDICAL BILLING, LLC, a Delaware limited liability company ("Zip Medical"); SIGNAL GENOMICS, LLC, a Delaware limited liability company ("Signal Genomics"); SIGNAL DIAGNOSTICS, LLC, a Delaware limited liability company ("Signal Diagnostics"), complain against ARK LABORATORY dba HELIX DIAGNOSTICS, a Michigan Limited Liability Company ("Ark Labs"), JAMES GROSSI ("Grossi"), NORMAN KIMINAIA ("KIMINAIA")(Ark Labs, Gross, and Kiminaia are at times collectively referred to as "Defendants"), and DOES 10 through 100, inclusive, as follows:

## PARTIES

1. Plaintiff Zip Medical is a Delaware limited liability company with its principal place of business is Los Angeles, California.

2. Plaintiff Signal Genomics is a Delaware limited liability company with its principal place of business is Los Angeles, California.

3. Plaintiff Signal Diagnostics is a Delaware limited liability company with its principal place of business is Los Angeles, California.

4. Plaintiffs are informed and believe that defendant Ark Labs is a Michigan limited liability company which conducts business within the state of California.

5. Plaintiffs are informed and believe that defendant James Grossi ("Grossi") is, and at all relevant times was, an individual residing in the state of Michigan, and at all relevant times served as the Chief Executive Officer of Ark Labs.

6. Plaintiffs are informed and believe that defendant Norman Kiminaia ("Kiminaia") is, and at all relevant times was, an individual residing in the state of Michigan, and at all relevant times served as the Chief Financial Officer of Ark Labs.

7. Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES 1-100 INCLUSIVE and, therefore, sue these Defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe, and based thereon allege, that each of the fictitiously named Defendants are responsible in some manner for the injuries alleged herein, and that such injuries as herein alleged were proximately caused by such Defendants.

8. Plaintiffs are informed and believe, and thereon allege, that at all times herein mentioned, Ark Labs, Grossi, Kiminaia and DOES 1 through 100 (collectively, "Ark Labs" or "Defendants"), were the agents, employees, partners, joint venturers, successors or predecessors in interest, owners, principals, and employers of the remaining Defendants, and by committing the acts hereinafter alleged, acted within the scope of such agency, partnership, employment, ownership, or joint venture. Plaintiffs are further informed and believe, and based thereon allege, that the acts and/or omissions of each Defendant was known by, authorized by, and/or ratified by the other Defendants.

9. Whenever in this complaint an act or omission of a corporation or other business organization is alleged, the allegation shall be deemed to mean and to include an allegation that the corporation or business organization acted or omitted to act through its agents.

## JURISDICTION

10. The Court has jurisdiction over this action pursuant to 28 U.S.C 1332(a). The amount of controversy exceeds $75,000 and there is complete diversity between all Plaintiffs and all of the Defendants. The Plaintiffs' principal place of business is in California, and the Defendants are Michigan entities and individuals with their principal places of business and residence in Michigan.

11. This Court has personal jurisdiction over all Defendants pursuant to Section 410.10 of California's Code of Civil Procedure and in accordance with the Constitutions of the United States and California.

12. Defendants, and each of them, affirmatively reached out beyond Michigan and into California to formalize their ongoing business relationship with Plaintiffs, directed the activities complained of hereunder at Plaintiffs in California; because Defendants purposefully availed themselves of the benefits of doing business with Plaintiffs in California with respect to the subject matter at issue; because the contract terms at issue were negotiated in the State of California; because Defendants' objections were to be performed in California; and because the harms inflicted by Defendants were felt by Plaintiffs in California. The facts supporting personal jurisdiction are laid out in further detail below and are expressly incorporated here.

**HOCHFELSEN & KANI, LLP**
895 Dove Street, Suite 300
Newport Beach, California 92660
Tel. (714) 907-0697

13. This district is the proper venue for this dispute pursuant to U.S.C. § 1391(b) because a substantial part of the events, injuries, and omissions giving rise to the claims asserted herein in this district, Plaintiffs' principal place of business is within this district, and defendants are subject to personal jurisdiction in this district.

## GENERAL ALLEGATIONS

### A.  ZIP MEDICAL BILLING SERVICES AGREEMENT

14. On November 15, 2017, Zip Medical and Ark Labs entered into a Billing Services Agreement ("Zip Billing Agreement") for a period of 12 months. The Zip Billing Agreement included a clause which automatically renewed the agreement for an additional 12 months on November 15, 2018. A true and correct copy of the Zip Billing Agreement is attached hereto as **Exhibit 1** and its terms are incorporated herein by this reference.

15. Pursuant to the Zip Billing Agreement, Ark Labs retained Zip Medical to provide certain medical billing and payment collection services, and in return, Ark Labs authorized Zip Medical to automatically debit Ark Labs' bank accounts for payment of its services on a monthly basis.

16. Ark Labs continuously and repeatedly failed to maintain sufficient funds in the account which it had authorized Zip Medical to debit for payment of its services, and thus fell behind in its payment obligations to Zip Medical.

17. On or about November 15, 2018, the Zip Billing Agreement renewed on its own terms; however, Ark Labs continued to fall further and further behind in payments with each passing month.

18. Since in or about March 2018, Ark Labs, by and through Grossi, its CEO, repeatedly made false representations to Zip Medical and to plaintiff Signal Genomics, whom Ark Labs had failed to pay pursuant to an agreement outlined in further detail hereinbelow, that Ark Labs would bring its accounts current. Instead Ark Labs made a number of partial and incomplete payments periodically in order to continue to receive the benefits of Zip Medical's and Signal Genomics' services under the false pretense that it would ultimately pay them what it owed. Specifically, Grossi made the following statements by means of text messages to Zip

Medical ("False Payment Promises"):

    a. March 9, 2018 – "Will do" in response to a delinquent payment demand.

    b. April 19, 2018 – "You will no doubt" in response to a delinquent payment demand.

    c. December 21, 2018 – "You'll have [payment] Monday."

    d. January 3, 2019 – "Signal going out. Balance of Zip as well."

    e. January 4, 2019 – "…norm sent out they will be there…Norman sent the checks they will to arrive tomorrow they're both cashable."

    f. January 5, 2019 – "Zip checks going out today will send tracking number."

    g. January 11, 2019 - "Zip and signal [Genomics] in here" (text message from Grossi accompanying an image of a FedEx overnight envelope that was never sent)

    h. January 18, 2019 – "Checks going out."

    i. February 5, 2019 – "Norm sent hold for tracking."

    j. February 11, 2019 – "Norm sent."

    k. February 14, 2019 – "[checks] Going out today."

    l. February 21, 2019 – "You will get signal checks this week."

    m. March 3, 2019 – "You will get [payment]."

    n. March 5, 2019 – "Wired 10k today and will be wiring 5k every business day this month to get you caught up by the end of the month…You will be caught up."

    o. March 5, 2019 – In response to Ark Labs' bounced checks: "I was concerned about that."

    p. March 12, 2019 - "Wire was sent."

    q. March 17, 2019 – "Don't worry you will be paid 82k by months end."

    r. March 20, 2019 – "More payments and Zip coming."

    s. April 1, 2019 – "Will send [payment]."

    t. April 9, 2019 – "Checks going out today."

    u. April 10, 2019 – "Right u will be caught up by months end."

    v. April 10, 2019 - "15k signal 12k zip" (text message from Grossi accompanying an image of a FedEx overnight envelope that was never sent)

FIRST AMENDED COMPLAINT

  w. April 17, 2019 – "…I have the checkbook now that norm is gone. I'll confirm sent if not will be sent by 11am via FedEx."

  x. April 29, 2019 – "[payment] Going out today."

19. Zip Medical is informed and believes and alleges thereon, that on or about February 22, 2019, Kiminaia, at Grossi's instructions, wrote a check to Zip Medical in the amount of $26,000 which both he and Grossi knew or should have known would not clear, and in fact did not clear for insufficient funds.

20. Zip Medical is informed and believes and alleges thereon, that on or about February 28, 2019, Kiminaia, at Grossi's instructions, wrote a check to Zip Medical in the amount of $26,000 which both he and Grossi knew or should have known would not clear, and in fact did not clear for insufficient funds.

21. Zip Medical is informed and believes and alleges thereon, that on or about January 5, 2019, January 9, 2019, January 18, 2019, and April 10, 2019, Kiminaia, at Grossi's instructions, created FedEx shipping labels with tracking numbers, which Grossi sent images of to Zip Medical to show that Ark Labs was mailing payment checks but which were never mailed.

22. Zip Medical complied with its contractual obligations and continued to provide Ark Labs with billing services pursuant to the Zip Billing Agreement based on Ark Labs' repeated promises to bring its account current.

23. Zip Medical is informed and believes and thereon alleges that, at the time each of the above representations was made, Ark Labs had no intention of bringing its account current. Rather, its promises to pay Zip Medical were only a ruse, intended to induce Zip Medical to continue to provide it with the benefit of Zip Medical's services without paying for them until it was able to complete its own in-house billing systems.

24. Zip Medical relied on these false representations by continuing to provide services to Defendants in the belief that the payments had been made, as promised, and/or would be made, as promised.

**B. SIGNAL GENOMICS SERVICES AGREEMENT**

25. On or about December 1, 2017, Ark Labs and Signal Genomics entered into a

Services Agreement ("Signal Genomics Services Agreement") for a period of 12 months. The Signal Genomics Services Agreement automatically renewed on its own terms for an additional 12 months on December 1, 2018.  A true and correct copy of the Signal Genomics Agreement is attached hereto as **Exhibit 2** and its terms are incorporated herein by this reference.

26. Pursuant to the Signal Genomics Services Agreement, Signal Genomics was to provide Ark Labs with certain account management, records management, customer complaint management and operational assistance, among other things, and Ark Labs was to pay Signal Genomics $12,000.00 per week for such services.

27. Ark Labs breached the Signal Genomics Services Agreement by failing to comply with any of its payment obligations since on or about July 2018.

28. Since on or about March 2018, Ark Labs, by and through Grossi, its CEO, repeatedly made false representations to Signal Genomics that Ark Labs would bring its account current. Instead, Ark Labs repeatedly made False Payment Promises in response to Signal Genomics' demands for payment in order to continue to receive the benefits of Signal Genomics' services under the false pretense that it would ultimately pay what it owned. Specifically, Grossi made such False Payment Promises to Signal Genomics and Zip Medical on the dates listed below[1]:

    a. March 9, 2018 – "Will do" in response to a delinquent payment demand.
    b. April 19, 2018 – "You will no doubt" in response to a delinquent payment demand.
    c. December 21, 2018 – "You'll have [payment] Monday."
    d. January 3, 2019 – "Signal going out. Balance of Zip as well."
    e. January 4, 2019 – "…norm sent out they will be there…Norman sent the checks they will to arrive tomorrow they're both cashable."
    f. January 5, 2019 – "Zip checks going out today will send tracking number."
    g. January 11, 2019 - "Zip and signal [Genomics] in here" (text message from Grossi accompanying an image of a FedEx overnight envelope that was never sent)

---

[1] Grossi's false promises referenced payments for both Zip Medical and Signal Genomics.

FIRST AMENDED COMPLAINT

    h. January 18, 2019 – "Checks going out."

    i. February 5, 2019 – "Norm sent hold for tracking."

    j. February 11, 2019 – "Norm sent."

    k. February 14, 2019 – "[checks] Going out today."

    l. February 21, 2019 – "You will get signal checks this week."

    m. March 3, 2019 – "You will get [payment]."

    n. March 5, 2019 – "Wired 10k today and will be wiring 5k every business day this month to get you caught up by the end of the month…You will be caught up."

    o. March 5, 2019 – In response to Ark Labs' bounced checks: "I was concerned about that."

    p. March 12, 2019 - "Wire was sent."

    q. March 17, 2019 – "Don't worry you will be paid 82k by months end."

    r. March 20, 2019 – "More payments and Zip coming."

    s. April 1, 2019 – "Will send [payment]."

    t. April 9, 2019 – "Checks going out today."

    u. April 10, 2019 – "Right u will be caught up by months end."

    v. April 10, 2019 - "15k signal 12k zip" (text message from Grossi accompanying an image of a FedEx overnight envelope that was never sent)

    w. April 17, 2019 – "…I have the checkbook now that norm is gone. I'll confirm sent if not will be sent by 11am via FedEx."

    x. April 29, 2019 – "[payment] Going out today."

29. Signal Genomics is informed and believes and alleges thereon, that on or about January 5, 2019, January 9, 2019, January 18, 2019, and April 10, 2019, Kiminaia, at Grossi's instructions, created FedEx shipping labels with tracking numbers, which Grossi sent images of to Signal Genomics to show that Ark Labs was mailing payment checks but which were never mailed.

30. In reliance on the false promises, Signal Genomics was induced to comply with its contractual obligations under the services agreement and did, in fact, comply by continuing to

provide Ark Labs with operational assistance based on Ark Labs' repeated promises to bring its account current.

31. Signal Genomics is informed and believes and thereon alleges that Ark Labs had no intention of bringing its account current, rather, its promises to pay Signal Genomics were only a ruse to continue to receive the benefit of Signal Genomics' services without paying for them. Ark Labs went so far as to send Signal Genomics pictures of checks that never arrived, fake FedEx tracking numbers and empty envelopes to continue to string Signal Genomics along on the promise that it would bring its account current.

32. Signal Genomics is informed and believes and thereon alleges that Ark Labs also breached the service agreement's anti-circumvention clause when it wrongfully contacted and solicited away one of Signal Genomics' clients.

### C. SIGNAL DIAGNOSTICS AGREEMENT

33. On or about January 2019, Signal Diagnostics and Ark Labs entered into an agreement wherein Signal Diagnostics would provide certain laboratory and testing services for Ark Labs ("Signal Diagnostics Lab Agreement"). A true and correct copy of the Zip Billing Agreement is attached hereto as **Exhibit 3** and its terms are incorporated herein by this reference.

34. Plaintiff Signal Diagnostics performed all its obligations pursuant to the Signal Diagnostics Lab Agreement, however Ark Labs has refused, and continues to refuse, to pay Signal Diagnostics for its services.

35. On or about April 19, 2019, and again on April 30, 2019, Ark Labs confirmed its payment obligation to Signal Diagnostics by and through its CEO, James Grossi who stated that "I'll pay your [Signal Diagnostics'] fees." However, he has failed and refused to make any such payment.

### FIRST CLAIM FOR RELIEF
### For Breach of Contract
### (Zip Medical Against Ark Labs)

36. Plaintiffs re-allege and incorporate by reference herein the allegations contained in the paragraphs above, as though fully set forth herein.

37. On or about November 15, 2017, Zip Medical and Ark Labs entered into the Zip Billing Agreement pursuant to which Ark Labs retained Zip Medical to provide certain medical billing and payment collection services, and in return, Ark Labs authorized Zip Medical to automatically debt Ark Labs' bank accounts for payment of its services on a monthly basis. The agreement renewed on its own terms on November 15, 2018.

38. Ark Labs fell behind in its payment obligations to Zip Medical by continuous and repeated failure to maintain sufficient funds in the account which it had authorized Zip Medical to debit for payment of its services. Ark Labs further breached its obligations under the agreement by failing to pay as agreed.

39. Zip Medical complied with its contractual obligations and continued to provide Ark Labs with billing services pursuant to the Zip Billing Agreement based on Ark Labs' repeated promises to brings its account current.

40. Zip Medical is informed and believes and thereon alleges that Ark Labs had no intention of bringing its account current, rather, its promises to pay Zip Medical were only a ruse to continue to receive the benefit of Zip Medical's services without paying for them.

41. Zip Medical performed all the promises, covenants, and conditions it agreed to perform in accordance with the Zip Billing Agreement, except for those promises, covenants and conditions excused by the acts and omissions of Ark Labs.

42. As a direct and proximate cause of Ark Labs' breach of the Zip Billing Agreement, Zip Medical suffered substantial damages in excess of $575,000.00, the exact amount of which will be proved at trial.

## SECOND CLAIM FOR RELIEF

### Fraud – Intentional Misrepresentation

### (Zip Medical Against Ark Labs and Grossi)

43. Plaintiffs re-allege and incorporate by reference herein the allegations contained in the paragraphs above, as though fully set forth herein.

44. Zip Medical is informed and believes, and thereon alleges, that on or about March of 2018 and onward, Ark Labs and Grossi made the above False Payment Promises detailed above

- 10 –

**FIRST AMENDED COMPLAINT**

to coax Zip Medical into continuing to provide its services to Ark Labs.

45. Zip Medical is informed and believes, and thereon alleges, that each of the False Payment Promises were intentional misrepresentations when made and were made with the intent of coaxing Zip Medical into continuing to provide its services to Ark Labs.

46. Zip Medical is informed and believes, and thereon alleges, that defendants, and each of them, knew each of the above False Payment Promises detailed above were false when made and made these intentional misrepresentations with the intent to deceive and defraud Zip Medical, and to induce Zip Medical to act in reliance on these intentional misrepresentation as alleged herein.

47. Zip Medical was ignorant of the falsity of defendants' intentional misrepresentations and believed them to be true and reasonably relied on such false statement to its detriment by continuing to provide services to defendants without receiving payment therefor.

48. Zip Medical was harmed by defendants' intentional misrepresentations because it would not have continued to provide its services to defendants had it known the truth as alleged herein.

49. As a direct and proximate cause of Ark Labs' intentional misrepresentations, Zip Medical suffered substantial damages in excess of $575,000.00, the exact amount of which will be proved at trial.

50. Zip Medical is informed and believes, and thereon alleges, that defendants intended to cause injury to Zip Medical or that their conduct was undertaken with willful and conscious disregard of Zip Medical's rights, or subjected Zip Medical to unjust hardship so as to constitute malice, oppression, or fraud under California Civil Code Section 3294, thereby entitling Zip Medical to punitive damages in an amount appropriate to punish or to set an example of defendants.

### THIRD CLAIM FOR RELIEF

**Fraud – Negligent Misrepresentation**

**(Zip Medical Against Ark Labs and Grossi)**

51. Plaintiffs re-allege and incorporate by reference herein the allegations contained

HOCHFELSEN & KANI, LLP
895 Dove Street, Suite 300
Newport Beach, California 92660
Tel. (714) 907-0697

in the paragraphs above, as though fully set forth herein.

52. Zip Medical is informed and believes, and thereon alleges, that on or about March of 2018 and onward, Ark Labs and Grossi made the False Payment Promises to coax Zip Medical into continuing to provide its services to Ark Labs.

53. Zip Medical is informed and believes, and thereon alleges, that each of the False Payment Promises were negligent misrepresentations when made and were made to coax Zip Medical into continuing to provide its services to Ark Labs.

54. Zip Medical is informed and believes, and thereon alleges, that when defendants made these negligent representations, they had no reasonable grounds to believe that they were true because the true facts were known to them.

55. Zip Medical is informed and believes, and thereon alleges, that defendants, and each of them, made these negligent misrepresentations with the intent to induce Zip Medical to act in reliance on these negligent misrepresentations as alleged herein.

56. Zip Medical reasonably relied on defendants' negligent misrepresentations to its detriment by continuing to provide services under the agreement with the expectation that it had been, or would be, paid.

57. Zip Medical was harmed by defendants' negligent misrepresentations because it would not have continued to provide its services to defendants had it known the truth as alleged herein.

58. As a direct and proximate cause of Ark Labs' negligent misrepresentations, Zip Medical suffered substantial damages in excess of $575,000.00, the exact amount of which will be proved at trial.

### FOURTH CLAIM FOR RELIEF

### Breach of Contract

### (Signal Genomics Against Ark Labs)

59. Plaintiffs re-allege and incorporate by reference herein the allegations contained in the paragraphs above, as though fully set forth herein.

60. On December 1, 2017, Ark Labs and Signal Genomics entered into the Signal

Genomics Services Agreement pursuant to which Signal Genomics was to provide Ark Labs with certain account management, records management, customer complaint management and operational assistance, among other things, and Ark Labs was to pay Signal Genomics $12,000.00 per week for such services.

61. Ark Labs breached the Signal Genomics Services Agreement by failing to comply with its payment obligations thereunder. Ark Labs fell behind in its payment obligations to Signal Genomics by continuous and repeated failure to make timely payments as required by the Signal Genomics Services Agreement.

62. Signal Genomics has complied with its contractual obligations under the services agreement and continued to provide Ark Labs with operational assistance based on Ark Labs repeated promises to brings its account current.

63. Signal Genomics performed all the promises, covenants, and conditions it agreed to perform in accordance with the Signal Genomics Services Agreement, except for those promises, covenants and conditions excused by the acts and omissions of Ark Labs.

64. Signal Genomics is informed and believes and thereon alleges that Ark Labs had no intention of bringing its account current, rather, its promises to pay Signal Genomics were only a ruse, perpetuated by repeated false promises of payment by way of sending empty envelopes, and false FedEx tracking numbers, to continue to receive the benefit of Signal Genomics' services without paying for them.

65. Signal Genomics is informed and believes and thereon alleges that Ark Labs also breached the service agreement's anti-circumvention clause by wrongfully contacting and soliciting at least one of Signal Genomics' clients.

66. As a direct and proximate cause of Ark Labs' breach of the Signal Genomics Services Agreement, Signal Genomics suffered substantial damages in excess of $600,000.00, the exact amount of which will be proved at trial.

## FIFTH CLAIM FOR RELIEF

**Fraud – Intentional Misrepresentation**

**(Signal Genomics Against Ark Labs and Grossi)**

67. Plaintiffs re-allege and incorporate by reference herein the allegations contained in the paragraphs above as though fully set forth herein.

68. Signal Genomics is informed and believes, and thereon alleges, that on or about March of 2018 and onward, Ark Labs and Grossi made the False Payment Promises with the intent of coaxing Signal Genomics into continuing to provide its services to Ark Labs.

69. Signal Genomics is informed and believes, and thereon alleges, that each of the False Payment Promises were intentional misrepresentations when made, or made with reckless disregard for their truth, in order to coax Signal Genomics into continuing to provide its services to Ark Labs.

70. Signal Genomics is informed and believes, and thereon alleges, that defendants, and each of them, knew each of the above False Payment Promises were false when made and made these intentional misrepresentations with the intent to deceive and defraud Signal Genomics, and to induce Signal Genomics to act in reliance on these intentional misrepresentation as alleged herein.

71. Signal Genomics was ignorant of the falsity of defendants' intentional misrepresentations and believed them to be true and reasonably relied on such false statement to its detriment by continuing to provide services to Ark Labs under the agreement.

72. Signal Genomics was harmed by defendants' intentional misrepresentations because it would not have continued to provide its services to defendants had it known the truth as alleged herein.

73. As a direct and proximate cause of Ark Labs' intentional misrepresentation, Signal Genomics suffered substantial damages in excess of $600,000.00, the exact amount of which will be proved at trial.

74. Signal Genomics is informed and believes, and thereon alleges, that defendants intended to cause injury to Signal Genomics or that their conduct was undertaken with willful and conscious disregard to Signal Genomics' rights, or subjected Signal Genomics to unjust hardship so as to constitute malice, oppression, or fraud under California Civil Code Section 3294, thereby entitling Signal Genomics to punitive damages in an amount appropriate to punish or to set an

example of defendants.

## SIXTH CLAIM FOR RELIEF

### Fraud – Negligent Misrepresentation

### (Signal Genomics Against Ark Labs and Grossi)

75. Plaintiffs re-allege and incorporate by reference herein the allegations contained in the paragraphs above as though fully set forth herein.

76. Signal Genomics is informed and believes, and thereon alleges, that on or about March of 2018 and onward, Ark Labs and Grossi made the False Payment Promises with the intent of coaxing Signal Genomics into continuing to provide its services to Ark Labs.

77. Signal Genomics is informed and believes, and thereon alleges, that each of the False Payment Promises were negligent misrepresentations when made and were made to coax Signal Genomics into continuing to provide its services to Ark Labs.

78. Signal Genomics is informed and believes, and thereon alleges, that when defendants made these negligent representations, they had no reasonable ground to believe that they were true because the true facts were known to them.

79. Signal Genomics is informed and believes, and thereon alleges, that defendants, and each of them, made these negligent misrepresentations with the intent to induce Signal Genomics to act in reliance on these negligent misrepresentation as alleged herein.

80. Signal Genomics reasonably relied on defendants' negligent misrepresentations to its detriment.

81. Signal Genomics was harmed by defendants' negligent misrepresentations because it would not have continued to provide its services to defendants had it known the truth as alleged herein.

82. As a direct and proximate cause of Ark Labs' negligent misrepresentation Signal Genomics suffered substantial damages in excess of $600,000.00, the exact amount of which will be proved at trial.

## SEVENTH CLAIM FOR RELIEF

### Breach of Contract

### (Signal Diagnostics Against Ark Labs)

83. Plaintiffs re-allege and incorporate by reference herein the allegations contained in the paragraphs above as though fully set forth herein.

84. On or about January of 2019, Signal Diagnostics and Ark Labs entered into the Signal Diagnostics Agreement wherein Signal Diagnostics would provide certain laboratory and testing services for Ark Labs ("Signal Diagnostics Agreement").

85. On or about April 19, 2019, and again on April 30, 2019, Ark Labs confirmed its payment obligation to Signal Diagnostics by and through its CEO, James Grossi, who stated that "I'll pay your [Signal Diagnostics'] fees."

86. Signal Diagnostics performed all the promises, covenants, and conditions it agreed to perform in accordance with the Signal Diagnostics Services Agreement, except for those promises, covenants and conditions excused by the acts and omissions of Ark Labs.

87. Ark Labs has breached the agreement by refusing, and continues to refuse, to pay Signal Diagnostics for its services.

88. As the direct and proximate cause of Ark Labs' breach of the Signal Diagnostics Agreement, Signal Diagnostics suffered damages in excess of $10,000.00, the exact amount of which will be proved at trial.

## EIGHTH CLAIM FOR RELIEF

### Fraud – Fraudulent Inducement

### (Signal Diagnostics Against Ark Labs and Grossi)

89. Plaintiffs re-allege and incorporate by reference herein the allegations contained in the paragraphs above as though fully set forth herein.

90. On or about January 2019, Signal Diagnostics and Ark Labs entered into the Signal Diagnostics Agreement wherein Signal Diagnostics would provide certain laboratory and testing services for of Ark Labs ("Signal Diagnostics Agreement").

91. Signal Diagnostics is informed and believes, and thereon alleges, that Ark Labs,

- 16 –

FIRST AMENDED COMPLAINT

by and through its CEO, Grossi, made intentionally false representations that it would pay Signal Diagnostics its reference fee in order to induce Signal Diagnostics into entering into the Signal Diagnostics Agreement.

92. Signal Diagnostics is informed and believes, and thereon alleges, that at the time Ark Labs entered into the Signal Diagnostic Agreement, it had no intention of complying with the promises and representations of payment made in the agreement.

93. Signal Diagnostics was unaware of Ark Lab's intent at the time it entered into the Signal Diagnostics Agreement.

94. Ark Labs' misrepresentations were material in that, had Signal Diagnostics been aware of Ark Labs' true intent, it would not have entered into the Signal Diagnostics Agreement.

95. Signal Genomics reasonably relied on such false statement to its detriment.

96. Signal Diagnostics performed all conditions, covenants, and promises required of it under the agreement.

97. Signal Diagnostics is informed and believes, and thereon alleges, that defendants, and each of them, knew each of the above statements were false when made and made these misrepresentations with the intent to deceive and defraud Signal Diagnostics, and to induce, and did in fact induce Signal Diagnostics to act in reliance on these false statements as alleged herein.

98. As a direct and proximate cause of Ark Labs' fraudulent conduct, Signal Diagnostics suffered damages in excess of $10,000.00, the exact amount of which will be proved at trial.

99. Signal Diagnostics is informed and believes, and thereon alleges, that defendants intended to cause injury to Signal Diagnostics or that their conduct was with willful and conscious disregard to Signal Diagnostics' rights, or subjected Signal Diagnostics to unjust hardship so as to constitute malice, oppression, or fraud under California Civil Code Section 3294, thereby entitling Signal Diagnostics to punitive damage in an amount appropriate to punish or to set an example of defendants.

//

## NINTH CLAIM FOR RELIEF

### Conspiracy To Defraud

**(Zip Medical and Signal Genomics Against Grossi and Kiminaia)**

100. Plaintiffs re-allege and incorporate by reference herein the allegations contained in the paragraphs above as though fully set forth herein.

101. Plaintiffs believe and thereon allege that defendants Grossi and Kiminaia and each of them (collectively referred to as the "Individual Defendants") entered into a mutual agreement to scheme to defraud Zip Medical and Signal Genomics by way of extending repeated false payment promises in order to continue to receive benefits of their services without having to pay for them.

102. As a direct result of the conspiracy to defraud, described herein, Zip Medical and Signal Genomics have sustained substantial damages in an amount to be proven at trial.

103. As a direct result of the conspiracy to defraud, described herein, Zip Medical and Signal Genomics are entitled to attorneys' fees according to proof at trial.

104. Zip Medical and Signal Genomics are informed and believe, and thereon allege, that the Individual Defendants intended to cause them injury or that their conduct was with willful and conscious disregard to their rights, or subjected them to unjust hardship so as to constitute malice, oppression, or fraud under California Civil Code Section 3294, thereby entitling them to punitive damage in an amount appropriate to punish or to set an example of the Individual Defendants.

## TENTH CLAIM FOR RELIEF

### Breach of Covenants of Good Faith and Fair

**(Zip Medical, Signal Genomics, and Signal Diagnostics Against Ark Labs)**

105. Plaintiffs re-allege and incorporate by reference herein the allegations contained in the paragraphs above as though fully set forth herein.

106. Ark Labs owed Plaintiffs a duty of good faith and fair dealing by virtue of Plaintiffs' relationship with them.

107. Ark Labs breached its duty and abused any discretions it may have had by, among

other things by refusing and failing to make payments and by repeatedly making false promises of payments to Plaintiffs. Ark Labs engaged in such willful conduct in bad faith, and for the purpose of gaining unwanted contractual advantages, and unfairly, unconscionably, and repeatedly making promises of payment without any intent to pay Plaintiffs for their services.

108. As a direct result of Ark Labs' breach of the implied covenant of good faith and fair dealing Plaintiffs have been injured and have suffered actual damages and monetary losses.

109. Plaintiffs are entitled to recover their damages and other appropriate relief for the foregoing breached of the implied covenant of good faith and fair dealing.

## ELEVENTH CLAIM FOR RELIEF

### California Civil Code Section 1719(a)(1)

### (Zip Medical Against Ark Labs)

110. Plaintiffs re-allege and incorporate by reference herein the allegations contained in the paragraphs above as though fully set forth herein.

111. A check was written by Ark Labs and drawn against a bank account in its name and made payable to Zip Medical in the amount of $26,000.00. Said check was written on February 22, 2019.

112. A second check was written by Ark Labs and drawn against a bank account in its name and made payable to Zip Medical in the amount of $26,000.00. Said check was written on February 28, 2019.

113. On or about March 5, 2019, both checks were retuned marked as "Insufficient Funds".

114. Under Civil Code Section 1719(a)(1), Ark Labs is liable to Zip Medical for the face amount of the check together with applicable service charges.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for a judgment against Ark Labs, as follows:

1. For general damages according to proof at the time of trial;

2. For damages in excess of $575,000.00 in connection with the breach of the Zip Billing

Agreement;

3. For damages in excess of $600,000.00 in connection with the breach of the Signal Genomics Services Agreement;

4. For damages in excess of $10,000.00 in connection with the breach of the Signal Diagnostics Agreement;

5. For the sum of $52,000.00 together with all applicable interest and charges pursuant to California Civil Code Section 1719(a)(1);

6. For costs of suit;

7. For prejudgment interest as allowed by law;

8. For attorneys' fees; and

9. For such and other further relief that the court deems just and proper.

**HOCHFELSEN & KANI, LLP**

Date: December 2, 2020            By: _____
David W. Kani, Esq.
Attorneys for Plaintiffs
ZIP MEDICAL BILLING, LLC,
SIGNAL GENOMICS, LLC, &
SIGNAL DIAGNOSTICS, LLC