## UNTIED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| ZIP MEDICAL BILLING, LLC, et al.,<br><br>    Plaintiff,<br><br>v.<br><br>ARK LABORATORY, LLC dba HELIX DIAGNOSTICS, et al.,<br><br>    Defendants. | CIVIL ACTION NO. 2:20-CV-09049<br><br>SCHEDULING CONFERENCE:<br>APRIL 8, 2021, 10:00 a.m. |

### **JOINT RULE 26(f) REPORT**

Plaintiffs ZIP MEDICAL BILLING, LLC, a Delaware Limited Liability Company ("Zip"); SIGNAL GENOMICS, LLC, a Delaware Limited Liability Company ("Signal Genomics"); SIGNAL DIAGNOSTICS, LLC, a Delaware Limited Liability Company ("Signal Diagnostics") and Defendants ARK LABORATORY, LLC dba HELIX DIAGNOSTICS, a Michigan Limited Liability Company ("Helix"); JAMES GROSSI; and NORMAN KIMINAIA, jointly submit this report pursuant to Rule 26(f) of the Federal Rules of Civil Procedure and the Court's Order setting a Scheduling Conference on April 8, 2021, following the parties' March 15, 2021, meet and confer conference.

A. <u>Statement of the Case</u>

Plaintiffs' Position

On November 15, 2017, Zip Medical and Ark Labs entered into a12-month agreement whereby Zip Medical would provide billing and payment collection services to Ark Labs. The Agreement included an automatic renewal clause pursuant to which the agreement renewed for an additional 12 months on November 15, 2018.  Pursuant to the agreement, Zip Medical was to be paid through automatic debits to Ark Labs' bank accounts.

On December 1, 2017, Ark Labs and Signal Genomics entered into a 12-month agreement whereby Signal Genomics was to provide Ark Labs with account management,

records management, customer complaint management and operational assistance, among other things.  This agreement also included an automatic renewal clause pursuant to which the agreement renewed for an additional 12 months on November 15, 2018.

In January 2019, Signal Diagnostics and Ark Labs entered into an agreement wherein Signal Diagnostics would provide certain laboratory and testing services.

Ark Labs' accounts were consistently underfunded for payment of Zip Medical's contract, thus Ark Labs fell behind in its payment obligations.

Ark Labs then breached the Signal Genomics Services Agreement by failing to comply with any of its payment obligations after June 2018.

Ark Labs never paid Signal Diagnostics, though it did represent twice in April 2019 that it would pay the fees.

Beginning in about March 2018, Ark Labs' CEO, James Grossi, began making a number of false representations to Zip Medical and to Signal Genomics that Ark Labs would bring its accounts current.  Grossi and Norman Kiminaia, the individual defendants, specifically falsely represented that a check had actually been sent, and forwarded a copy of the nonexistent check and Fed Ex routing information that was false, all for the purpose of keeping the contract going. Ark Labs then made a number of partial and incomplete payments periodically in order to continue to keep the agreements going.  At one point in April 2019, Grossi also represented that he would personally pay the fees for Signal Diagnostics.

Zip Medical, Signal Genomics and Signal Diagnostics believed that the representations were made in good faith, and continued to provide Ark Labs with services pursuant to the Agreements based on Ark Labs' repeated misrepresentations.

While these promises were being made, Ark Labs was in the process of developing its own in-house billing and management system.  Once that system was completed, Ark Labs breached its agreement, never paid what it promised, and did not comply with any of its obligations.  Ark Labs also breached the anti-circumvention clause of its agreement with Signal Genomics by wrongfully contacting and soliciting away one of Signal Genomics' clients. Based on this history, Ark Labs believes that the defendants never had any intention of paying

their bills, but instead were stringing Ark Labs along until they could bring everything in house and stiff Ark Labs for what was owed.

Defendants' Position

Defendants deny all liability and contend that Plaintiffs engaged in material breaches of their duties under the agreements that excused Defendants' performance. Helix is a clinical laboratory testing company based in Michigan. In late 2017, Helix entered into contracts with Zip Medical and Signal Genomics. Under the Zip Medical contract, Zip Medical was to perform medical billing and collections services on Helix's behalf in return for a percentage of the amount collected. Under the Signal Genomics contract, Signal Genomics was to perform education of prospective customers and other services in return for a flat fee. In January 2019, Helix entered into the third contract, the Signal Diagnostics agreement. Signal Diagnostics was to serve as a reference laboratory and provide laboratory services for Helix. All three Plaintiffs are owned and/or controlled by the same person, Alex Meshkin.

Shortly after executing the third contract, it became clear that the arrangement set up by Meshkin did not comply with the contract's terms or Medicare regulations, so Helix immediately canceled the agreement. Around the same time, it also became clear that Zip Medical was not properly billing for the services Helix performed. Zip Medical failed to follow-up on accounts receivable, failed to properly bill patients for deductibles and co-pays, abandoned viable claim appeals, and committed a host of other coding and payment errors. As a result, Helix terminated the contract for cause in April 2019.

At the time the Zip Medical contract was terminated, it was Helix's intention to continue with the separate agreement with Signal Genomics. However, Meshkin terminated the contract between Helix and Signal Genomics in retaliation for Helix terminating the Zip Medical and Signal Diagnostics contracts. This turned out to be fortuitous as it was later discovered that Meshkin and his colleague, Michael Brier (a Signal Genomics employee), appeared to have engaged in illegal referral practices relating to the Signal Genomics contract.

Defendants further deny all allegations related to fraud or conspiracy and assert that this case should be a straightforward contract dispute between Helix on the one hand, and Zip

Medical, Signal Genomics, and Signal Diagnostics on the other. Defendants do intend to assert counterclaims based on Plaintiffs' material breaches, which will likely be subject to arbitration. (*See* discussion *infra* at § C.)

   B. <u>Subject Matter Jurisdiction</u>

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

   C. <u>Legal Issues</u>

Plaintiffs do not believe there to be any unusual substantive, procedural or evidentiary issues.

Defendants anticipate two unusual procedural issues, which may lead to this case being stayed while the parties' various claims are arbitrated:

First, Defendants have a multi-faceted motion to dismiss pending which, if successful, should limit the Second Amended Complaint to breach of contract claims and remove the individual defendants from the action entirely. The individual defendants filed a motion to dismiss for lack of personal jurisdiction, and also moved to dismiss the conspiracy to defraud claim alleged against them because it is not pled with the requisite level of specificity. All defendants moved to dismiss the various fraud claims because those claims violate the economic loss rule. Helix also moved to dismiss the implied covenant of good faith and fair dealing claim because it is duplicative of Plaintiffs' breach of contract claims. (ECF No. 27-1.) This motion is fully briefed and under submission.

Second, the agreements at issue have arbitration clauses that Helix intends to invoke. The parties are in agreement that some of Plaintiffs' claims should be arbitrated, but disagree about others. Specifically:

   1. Zip Medical agrees to arbitrate its breach of contract claim, but disputes that its fraud claims are subject to arbitration. These fraud claims are both part of Defendants' pending motion to dismiss. If the Court does not dismiss them, Helix intends to seek an order compelling arbitration of them so that they are adjudicated together with the breach of contract claim.

   2. Signal Genomics agrees that all of its claims are subject to the arbitration clause in its

contract with Helix. Thus, these claims should not be the subject of a motion to compel arbitration, but will instead be litigated separately with an arbitrator.

    3. Signal Diagnostic's contract with Helix does not contain an arbitration provision, but the damages sought in connection with this claim are approximately $10,000 and are thus only a fraction of the total amount at issue. If Signal Diagnostics will not agree to voluntarily arbitrate its claim, then Helix will seek a stay of this claim pending the resolution of the arbitration proceeding that does occur.

    Thus, as a result of Defendants' pending and anticipated motions, Defendants anticipate that Plaintiffs' Second Amended Complaint will be limited to breach of contract claims, all of which should be arbitrated or resolved following the conclusion of arbitration.

  D. <u>Parties and Evidence</u>

    **Parties:**
    The following are likely to have knowledge of admissible evidence:
1. Plaintiff Zip Medical Billing, LLC;
2. Plaintiff Signal Genomics, LLC;
3. Plaintiff Signal Diagnostics, LLC;
4. Defendant Ark Laboratory, LLC dba Helix Diagnostics;
5. Defendant James Grossi is Helix's Chief Executive Officer and executed all agreements between plaintiffs and Helix;
6. Defendant Norman Kiminaia is Helix's Chief Financial Officer and has knowledge of the manner in which Helix performed its contractual obligations pursuant to Helix's respective agreements with each plaintiff.

    **Witnesses:**
1. Alex Meshkin is the chief executive officer of Plaintiff Zip Medical Billing, LLC, Plaintiff Signal Genomics, LLC, and Plaintiff Signal Diagnostics, LLC. He executed all contracts between plaintiff entities, and defendants;
2. Hamid Sattar, MD, was Helix's Medicare Authorized Official and can testify as to Helix's Medicare billing and receivables;[1]

---

[1] Dr. Sattar is no longer employed by Helix.

3. James Berg was Helix's Vice President and has knowledge of the manner in which Helix performed its contractual obligations pursuant to Helix's respective agreements with each plaintiff;[2]

4. Brian Tierney is Helix's President and has knowledge of the manner in which Helix performed its contractual obligations pursuant to Helix's respective agreements with each plaintiff;

5. Michael Brier is the owner and practice manager of Barrington Urgent Care and has knowledge of the manner in which Helix performed its contractual obligations pursuant to Helix's respective agreements with each plaintiff.

**The following documents are believed to be relevant to this dispute**:

1. The agreements at issue;
2. All communications between Hamid Sattar, James Grossi, James Berg, Brian Tierney and Norman Kiminaia pertaining to Helix's performance of its contractual obligations to each plaintiff, including but not limited to emails and text message communications;
3. All text message and email communications between James Grossi and Alex Meshkin;
4. All documents reflecting payments from Helix or Helix's principals to Berrington Urgent Care or Michael Brier or to any entity owned or controlled by Michael Brier;
5. All communications between Helix's principals and Michael Brier;
6. All internal communications within and among Plaintiffs regarding the performance of their respective contractual obligations;

E. <u>Insurance</u>

None.

F. <u>Magistrate Judge</u>

Plaintiffs do not consent to a mutually agreeable magistrate judge.

G. <u>Discovery</u>

The parties have agreed to the proposed schedule attached hereto as **Attachment 1**,

---

[2] Mr. Berg is no longer employed by Helix.

which includes dates pertaining to the disclosure of expert witnesses.

The parties also anticipate negotiating the terms of a Stipulation and [Proposed] Protective Order regarding potential trade secrets to be submitted to the Court, pursuant to which certain documents produced during discovery would be maintained as confidential under Federal Rule of Civil Procedure 26(c).

The parties do not anticipate any unusual issues relating to disclosure or discovery of electronically stored information. The parties agree to produce reasonably accessibly electronically stored information with agreed-upon metadata, either as native files or in single-page TIFF format with OCR and load files, to the extent such information is otherwise discoverable. The parties will further discuss the details on format and will cooperate in the production of electronically stored information.

H. <u>Motions</u>

Plaintiffs anticipate filing Motions to Compel Discovery at some point during this case.

Although they reserve their right to do so, Defendants do not anticipate filing discovery or case dispositive motions because of their intent to seek an order compelling arbitration of any claims that remain following the ruling on their motion to dismiss.  (*See* discussion *supra* at § C.)  If the Court finds that any remaining claims are not subject to arbitration, Defendants will seek a stay of those claims since the parties agree certain claims will be arbitrated regardless. Following the conclusion of that proceeding, the parties may be able to use the outcome to resolve any remaining claims.  Thus, Defendants anticipate that the substance of this dispute may be fully adjudicated outside the instant litigation.

I. <u>Class Certification</u>

N/A

J. <u>Dispositive Motions</u>

Parties have agreed to a proposed cut-off date of 06/30/2022.

K. <u>Settlement /ADR</u>

The parties engaged in informal settlement discussions for nearly one year prior to

litigation. Plaintiffs were forced to proceed with litigation when settlement negotiations failed.

As set forth above, the parties agree that certain claims asserted by Plaintiffs are subject to arbitration, and Defendants intend to commence that process after their motion to dismiss is resolved.

L. Pretrial Conference and Trial

The parties propose a joint pretrial conference on November 1, 2022, and a trial date of November 15, 2022.

M. Trial Estimate

Plaintiffs estimate trial in this matter to require 10-14 days.

Defendants' estimate depends entirely on how many claims may need to be tried. If this entire matter goes to trial, including any counterclaims asserted by Defendants, then Defendants agree it will be 10-14 court days. This is due largely to the number of witnesses identified above, plus at least two expert witnesses per side relating to Medicare regulation and billing issues, for a total of approximately nine witnesses. Discovery has not yet commenced and additional witnesses may be identified during that process.

N. Trial Counsel

Steven I. Hochfelsen and David W. Kani will serve as Plaintiffs' trial counsel for trial in this matter.

Annie Amaral and Bradley Carroll will serve as Defendants' trial counsel in this matter. They will be assisted by Defendants' Michigan counsel, Andrew Wachler and Stephen Shaver.

O. Independent Expert or Master

The parties do not anticipate a need for appointing a master or an independent scientific expert.

P. Other Issues

The Court has taken Defendants' motion to dismiss Plaintiffs' Second Amended Complaint under submission.

Given the legal issues identified above regarding dismissal and arbitration of certain claims, Defendants suggest continuing this status conference by 90 or 120 days to permit the Court time to issue a ruling on the motion to dismiss and the parties an opportunity to determine how best to handle the arbitration issues.  For instance, if the Court grants Defendants' motion to dismiss in full, all that will remain of the Second Amended Complaint are three breach of contract claims, two of which the parties agree are subject to arbitration and the third of which is worth only approximately $10,000.  Under that scenario, Defendants would not need to seek an order compelling arbitration at all, but instead would seek a stay of that small remaining claim, assuming no stipulation was possible.  Defendants of course understand that the parties must work with the Court "to secure the just, speedy, and inexpensive determination" of this action, Fed. R. Civ. P. 1, and while they believe that a short three- or four-month continuance of the status conference is consistent with that mandate, they also understand the Court's desire and need to keep the litigation moving forward.  They have thus worked with Plaintiffs to develop a proposed schedule that presumes all claims are in play, (see Attachment 1), but Defendants jointly propose that schedule subject to the disclaimer that it may need to be changed based on anticipated procedural developments that will occur in the next few months.

DATED:  March 25, 2021            HOCHELSEN & KANI LLP


                                  By: ___/s/ David W. Kani_____
                                          David W. Kani
                                       Attorneys for Plaintiffs

DATED:  March 25, 2021            DOWNEY BRAND LLP


                                  By: ___/s/ Annie S. Amaral *(as auth'd on 3/25/21)*_____
                                          Annie S. Amaral
                                       Attorneys for Defendants

## **FILER'S ATTESTATION**

Pursuant to Local Rule 5-4.3.4, I hereby attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

DATED:  March 25, 2021　　　　　　　HOCHELSEN & KANI LLP


　　　　　　　　　　　　　　　　　By:  ___/s/ David W. Kani_____
　　　　　　　　　　　　　　　　　　　　David W. Kani
　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of March 25, 2021, I electronically filed the parties' **JOINT RULE 26(f) REPORT** with the Clerk of the Court using the court's CM/ECF system which will send notification of such filing to the following individuals:

Annie S. Amaral, Esq.
*aamaral@downeybrand.com*
J. Patrick Doust, Esq.
*pdoust@downeybrand.com*
**DOWNEY BRAND LLP**
621 Capita Mall, 18th Floor
Sacramento, California 95814
Counsel for Defendants

Andrew Wachler, Esq.
*awachler@wachler.com*
**WACHLER & ASSOCIATES, P.C.**
210 E. Third Street, Suite 204
Royal Oak, Michigan 48067
Counsel for Defendants

By: /s/ David W. Kani
David W. Kani